The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk is ITT Hartford Insurance Company.
4. Plaintiff's average weekly wage was $231.49, yielding a compensation rate of $154.33 at the time she developed her occupational disease.
5. Plaintiff sustained a compensable occupational disease on or about December 2, 1994.
6. Both parties signed a Form 21 Agreement which was approved by the Commission on January 23, 1995. On the Form 21, plaintiff's average weekly wage was listed as being $230.00
7. The following medical records are stipulated into evidence:
 a. Medical records of Dr. Naso (attached to his deposition)
b. Medical records of Dr. DeFranzo including:
January 28, 1997 letter from Randy Duncan (4 pp.)
Note of June 4, 1996
 23 Additional pages of Dr. DeFranzo's notes and test results from Outpatient Rehabilitation Center.
8. The issue to be resolved is whether plaintiff is entitled to additional compensation and medical treatment subsequent to July 12, 1995, her last date of employment with defendant-employer.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, a twenty-six year old female, has worked as a crimper and prep worker for defendant-employer since September, 1994.
2. Defendant-employer makes cables for computers and heart monitors. During the manufacturing process it was necessary to place crimpers on both ends of the cable. It was plaintiff's job to place wire into the machine crimper. Plaintiff's job was highly repetitive in nature. It involved use of the hands to install connections on the ends of wires. On a typical day, plaintiff was required to crimp eight cables an hour, which meant that each day she crimped seventy to eighty cables with twenty to forty wires per cable and connectors on each end of the wires (some 2,800 -6,400 connectors). Plaintiff utilized such hand tools as pliers, wire cutters and wire strippers. She had to pull or strip insulation off the wires before crimping and cut wires if the crimps were not placed satisfactorily. As she was right handed, plaintiff used that hand predominantly in her work.
3. On or about December 2, 1994, plaintiff developed the occupational disease of carpal tunnel syndrome and tendinitis of both hands as a result of her employment with defendant-employer.
4. After initially reporting her symptoms to her supervisor, plaintiff presented and was evaluated on December 5, 1994, by Dr. James M. Ross of Claremont. He diagnosed plaintiff with early bilateral carpal tunnel syndrome and recommended a conservative course of treatment, including medication and splinting.
5. On January 31, 1995, plaintiff returned to Dr. Ross. At that time, Dr. Ross noted that plaintiff's condition had improved. He recommended that plaintiff return to work with some restrictions, primarily mandating no repetitive hand motion. Plaintiff was provided with light duty work within the recommendation of Dr. Ross.
6. On February 16, 1995, plaintiff returned to Dr. Ross. Dr. Ross administered injections and recommended some exercises and physical therapy. Dr. Ross recommended a continuation of conservative treatment and referred plaintiff to Dr. Stephen J. Naso.
7. Dr. Naso is a hand surgeon whose practice is restricted to hand surgery and surgery of the upper extremities. He first had an occasion to evaluate plaintiff on February 28, 1995. At that time he also reviewed EMG and NCV studies that were performed while plaintiff was under the care of Dr. Ross. EMG and NCV studies are commonly used to make a judgment as to whether or not there is any type of nerve damage. These tests allow for determination of whether or not there is compression of the nerve, insofar as the diagnosis of carpal tunnel syndrome. Nerve conduction studies are usually very reliable.
8. Dr. Naso recommended a nerve conduction study to rule out a nerve compression problem. Two nerve conduction studies were actually completed. Neither revealed evidence of generalized or vocal neuropathic processes. Based upon these results, Dr. Naso did not feel that plaintiff had carpal tunnel syndrome and thus did not recommend surgery.
9. However, defendants admitted compensability and Forms 21 and 26 were executed and approved by the Commission. Temporary total disability compensation was paid through May 14, 1995.
10. By Order dated October 31, 1995, the Industrial Commission allowed plaintiff to change her treating physician. She selected Dr. Anthony DeFranzo. Although defendants did not appeal the Commission's Order, they refused to authorize surgery suggested by Dr. DeFranzo.
11. Plaintiff continued to complain of pain and numbness in her hands. Dr. Naso again prescribed a nerve study which was conducted on May 25, 1995 by Dr. Allen Smith at the Neurodiagnostic Center at Catawba Memorial Hospital. These findings were basically normal with no significant difference from the EMG's that were conducted in December, 1994, March, 1995 and May, 1995. Again, in view of plaintiff's examination, her history and the normal nerve conduction studies, Dr. Naso advised against surgery. Dr. Naso's diagnosis proved to be incorrect, as subsequent surgery revealed.
12. Dr. Naso approved plaintiff's return to work to two jobs, crimper and final inspection/tester.
13. On May 14, 1995, plaintiff returned to her previous job of crimp and prep without any modifications. Defendant-employer's human resources manager, Gail Bowman, was unaware that any modifications should be made or that the job should be switched. The two jobs (including crimp and prep) that had been submitted to Dr. Naso for approval were repetitive motion jobs.
14. On June 29, 1995, defendant-employer, Volex, laid plaintiff off along with other employees. As of the time plaintiff was laid off, it was Dr. Naso's intention that she should not return to a job which was stressful to her hands or which required repetitive motion. Neither the crimp or the prep job met Dr. Naso's restrictions.
15. As of August, 1995, plaintiff still awakened at night with complaints of numbness and tingling in her hands, but worse on the right. The pain radiated from her right hand to the entire right upper extremity.
16. Dr. Anthony J. DeFranzo, Jr. is a board-certified plastic, hand and microsurgeon associated with Bowman Gray. He attended Boston University Medical School and trained as a plastic surgeon at Duke University and completed a microsurgery fellowship there. Dr. DeFranzo tried conservative treatment for plaintiff beginning August 1, 1995, the date she first presented. After conservative treatment failed, a right carpal tunnel release was performed February 19, 1996, despite the numerous negative nerve conduction tests. In a significant number of persons with carpal tunnel syndrome, nerve conduction studies are negative even though the person has carpal tunnel syndrome.
17. Plaintiff's job as a crimper was a repetitive assembly line type job. A person engaging in such a job, is at a higher risk of developing carpal tunnel syndrome than members of the general public not similarly exposed.
18. Plaintiff's occupation was to a substantial degree of medical certainty, the cause of her bilateral carpal tunnel syndrome.
19. The February 19, 1996, carpal tunnel syndrome surgery confirmed plaintiff's carpal tunnel syndrome as indicated by a thickened synovium (membrane lining medial nerve). The surgery, as performed, was appropriate and plaintiff has had significant improvement in her right hand.
20. The undersigned gives greater weight to the testimony of Dr. DeFranzo than to Dr. Naso, whose diagnosis of plaintiff was proven incorrect by surgery.
21. Plaintiff is still being treated by Dr. DeFranzo and is not at maximum medical improvement. A left hand surgery may be required in the future.
22. Plaintiff has been under medical restrictions for the use of her hands since the June 29, 1995, layoff. She has made a reasonable effort to find employment and applied for work at fifteen to twenty places. In addition, plaintiff is working with North Carolina Vocational Rehabilitation to find work she is able to perform.
23. Plaintiff received thirteen weeks of unemployment benefits in the amount of $113.00 per week through October 1, 1995.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due to the manner in which plaintiff utilized her hands while working as a crimper for defendant-employer, she developed disabling bilateral carpal tunnel syndrome which disease or condition is due to causes and conditions characteristic of and peculiar to her employment in the same trade, but excluding all ordinary diseases of life to which the general public is equally exposed outside of that employment. Plaintiff has developed a compensable occupational disease pursuant to the provisions of N.C. Gen. Stat. § 97-53(13).
2. As a result of her bilateral carpal tunnel disease giving rise hereto, plaintiff has remained temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $154.33 per week beginning June 30, 1995 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Defendant is obligated to pay all reasonable medical expenses including right carpal tunnel syndrome surgery performed by Dr. DeFranzo, incurred by plaintiff as a result of her occupational disease, which are reasonably designed to effect a cure, provide relief or lessen her period of disability associated therewith. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants, subject to attorney's fees hereinafter approved, shall pay to plaintiff, weekly compensation at the rate of $154.33 beginning June 30, 1995, and continuing until further Order of the Commission. The amount of compensation that has accrued to the date of the filing of this Opinion and Award shall be paid in a lump sum.
2. Defendants are entitled to a credit of $1,469.00 for plaintiff's unemployment benefits against the lump sum disability payment due plaintiff for her accrued temporary total disability.
3. An attorney's fee for plaintiff's counsel of 25% of the above compensation is approved and shall be paid by defendants directly to said counsel after being deducted from the lump sum amount due plaintiff, minus the credit owed to defendants. Thereafter, plaintiff's counsel shall be paid every fourth check.
4. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff, including the surgery by Dr. DeFranzo, in such amounts as approved by the Commission.
5. Defendants shall pay the costs due this Commission.
This the ____ day of September 1997.
 S/ ____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________ GEORGE T. GLENN II DEPUTY COMMISSIONER
LKM/bjp